May it please the Court, Jay Weil, with the law firm of Sideman & Bancroft. We are also obviously the respondent and appellant. We also represent the taxpayer who has been audited in this case, whose summons was served on us to produce records that she delivered to us. Let me start out by saying quickly the contents of the records are not protected by the Fifth Amendment. You represent you also? Excuse me? You represent you also? I represent myself also, Your Honor. So the contents of the records are not protected by the Fifth Amendment. The concern here is by us producing the records to the government, we are in effect incriminating our client. In effect, by doing this, we really connect all the dots. We answer the question of where the documents have been since October 13, 2010, when they were turned over by the accountant back to my client, who then turned them over to us on October 18, 2010. We've had them for that time. There is no way that these documents can be admitted into court, I believe, without some evidence of how it is where they've been for two-plus years. And by our ‑‑ by us producing those records without an act of production immunity, which the government could easily ‑‑ they could have had these documents two years ago, but for some reason chose not to give my client and our firm act of production immunity. By us producing these records at some point in the future, if the district judge's order is affirmed, we connect all the dots. We explicitly acknowledge that the documents exist. They've not been tampered with. Nothing's been added. Nothing's been deleted. They've been in our client's possession on us for over two and a half years. Counsel, what's our standard of review here? Isn't the question of whether the existence and authenticity of the documents is a foregone conclusion, isn't that a question of fact, that we would review for clear error? Clear error, Your Honor. I agree with that. But in this case, I realize that the government's ‑‑ and the most important thing is the chain of custody. That is, there is no way, I believe, that they can offer these records into evidence without ‑‑ Where's the clear error where the district court has found as a fact that the existence, the possession, and the authenticity of the documents are a foregone conclusion and where that is a recognized exception to the inability to produce the records? I understand. The judge is wrong, Your Honor. But why? In what respect? He's wrong in this way, that what's happened, the government believes that actor production immunity is not required because an accountant saw the records for one day. During the one month she had them, all she's done is describe the categories of documents. They measure five and a half feet. She kept ‑‑ there's no indication she kept any notes, inventory, memorandum. At the enforcement hearing before the district judge, the question was asked at record 31, if it is a foregone conclusion that you will be able to authenticate the records only through the accountant, why not grant actor production immunity? The answer from the government attorney was, made no sense. It said, he said, it is very rare, very rare, it has to come from the top. Well, let me, I'm not sure I follow your argument. I can't tell whether you're arguing that the factual findings of the district court, that it's a foregone conclusion, are clearly erroneous, or whether you're saying even though they're not clearly erroneous, there's an additional legal requirement that the government provide immunity. Both. I guess the answer is both, Your Honor. I think in this particular case, another reason. The, here's what will clearly incriminate my client. Wait, counsel. Excuse me. The second piece, I assume Judge Kraber enunciated, because that can't be right. I mean, if, in fact, there was the factual conclusion with regards to the foregone conclusion is sustainable, then there doesn't have to be any immunity. Well, I don't believe it was. It is sustainable. But in addition, what the court, by the court's order, it changed the order of the summons by doing this. The summons was, was drafted instead of a summons being issued that said produce all of the records, every piece of paper that was turned over by the accountant back to my client, and then it was turned over to our law firm. Instead, the summons says produce the following 14 categories of documents from check 2 that are contained in the boxes. I thought it said including. So it doesn't say. Yes, included in the following, those categories of documents included in the following containers, four banker boxes and three large accordion folders. I suggest to you that what's now going to have to happen is my client has to go through what we have. I suggest to you there are other records within those four banker boxes and three large accordion folders. So someone has to go through what we have to make, to produce, because the judge then, the district judge then added, he changed it to specifically the following pieces of paper from including but not limited to. And so. Well, that's more limited. That's more to your client's advantage. I understood. Is it not? I understood. But someone has to go through the box. The only person, someone has to go through the boxes and sort out what is. Why does that make it inappropriate? Because my client has to do that. In effect, she's incriminating herself by producing records. You said that you started by saying the documents are not protected by the Fifth Amendment. No. I agree. The contents of the documents are not protected, but their production. Their production by my client is. She's incriminating herself if she's required to go through the four. Counsel, there's a question. Could I squeeze in? Is this your calling argument? Excuse me? Is this your calling argument somebody has to call through? Yes. As I read the record, that wasn't raised for the district court. It was raised. What occurred was the declaration of the accountant, Mary Faust, was filed as a reply to our opposition to the petition in force. So we then, we argued it at the hearing. I agree. We didn't have an opportunity to file a sur rebuttal to their reply brief that contained for the first time her very exhaustive declaration. Is there any chance that if you say the district court didn't even deal with that issue? Because there's no indication in the record that I see that it was before the district court. It wasn't raised. By argument, Your Honor. I agree with you. There was no declaration of it. We didn't file it. Why hasn't, why have, are we getting to it? Why isn't that a waived argument? I don't believe it is, Your Honor. We brought it up in response to a reply brief, and we did it in the oral argument. They filed it in their reply, the declaration. I don't know why they didn't file it in the original petition. In any event, it's going to require my client to go through these. Before you get to that, I want to get to the waiver issue. Sure. How was it brought up? Just an oral discussion with the district judge? Or was there a motion filed? There was not. The government filed in their reply to our opposition to the petition. I understand that. I was asking what you did, and I take it what you're saying. You filed nothing, but you did include it in your oral argument. No. We filed a, we got permission to file a reply declaration, which contained some of her notes, the billings from the accountant, where she only spent 45 minutes looking at these documents. And an oral argument at the hearing. I announced to the judge that one of the things that's going to have to happen here is, if this summons is enforced, is that someone's going to have, my client's going to have to go through those pieces of paper to call out what is now covered by these 14 categories and what is not. You're correct. There was no declaration from anyone saying that. It was an argument that we made at the hearing. So that, that, so my client is going to have to do that. We'll clearly, because she's going to have now represent through me that these are the categories, these are the pieces of paper that are covered by that. But, sir, the district court changed the language in order to preclude the possibility that there would be response, that there would be responsive documents that were not in these boxes and folders. If you simply produce the boxes and folders, is there any chance that anybody's going to have a problem with that? I have no idea, Your Honor. There may be. We will ask the government. But I assume they will tell us that, fine, just produce the boxes and folders and don't separate anything more than that and we'll be perfectly happy. Do you doubt that? I can see a situation where, at trial, when we produce the records, that the accountant, she's then shown these records and says to the government lawyers, oh, I remember there was some other, I remember there were other pieces of paper in those files that I returned two or three or four years ago. How's that going to get resolved? The only way that's going to get resolved is some evidentiary hearing. That's a different question, but that doesn't have to do with this problem of this culling problem. My client has to go through the boxes. I represent to you there are other, it's likely that there are other pieces of paper in five and a half feet of records that don't, that aren't check receipts, file folders, et cetera. Someone has to go through those boxes to comply with the court order. Counsel, we have your argument and you've exceeded your time. Thank you, Your Honor. So I think we understand your position and we'll hear from the government. Thank you. Hong. Good morning. May it please the Court. I'm Mike Hongs from the Department of Justice in Washington on behalf of the United States. I think the Court seems to understand the facts of the case pretty well and perhaps I should just begin with this culling argument that seems to have become kind of the heart of this case. And in answer to Judge Berzin's question, yes, if they give us the boxes and the accordion folders, that's fine. That would completely satisfy. We don't expect that anybody has to do any sorting or culling here. Mr. Wiles is a very respected attorney. We don't think there's been any tampering with documents going on, and that whole argument just doesn't really make sense to us. And having so conceded an open court, you would, I presume, be in a position not to argue later that the response to the subpoena is incomplete. As to this summons, I think that's correct. I mean, that's not to say that they wouldn't later try to seek something else. That's down the road. I have a question for another day. So the real question is, was the district court, especially given the standard of review, which is obviously quite deferential, the accountant said that she could identify this stuff. You know, one is a little skeptical as somebody who's been through this in 45 minutes could say that this particular document was or wasn't in that file, for example. I mean, she could say things about the boxes, and she could say things about what these documents sort of generally look like. But if the question became whether X piece of paper was in that file, how could she do that? I don't think the standard for any of this is whether any witness, including even Ms. Noland, who was the owner of these documents, the creator of them, would be able to say with absolute certainty that one particular page was missing or was not missing. The court's standard, this Court's standards, talk about the government has to, in order to qualify for foregone conclusion, show with reasonable particularity, not the absolute existence of every single document. I mean, I give you the example of the Bright case a couple of years ago. It involved foreign bank accounts or credit cards issued by foreign banks. This Court said it was sufficient that the government knew that the tax – knew before issuing the summons that the taxpayer had a couple of foreign payment cards. The government could surmise that there's probably records because banks issue records along with payment cards. It didn't have to specifically know what those records were. And, of course, the Court also drew a distinction, a careful distinction between the cards that the government knew about before issuing the summons and two additional cards that it found out about later. Because the banks would have business records about the various transactions and they would be able to tell the government or tell the court whether these documents were, in fact, documents that they issued and according – because they're documents in terms of the pieces of paper. Here, the pieces of paper were not those of the accountant. They were those of Ms. Nolan. I gather they were a lot of different things. And the accountant knew generally what was in there. But if somebody – if somebody wants to introduce, you know, a particular day-timer book and to show that she was at a certain place at a certain time and somebody wants to know was this, in fact, Ms. Nolan's day-timer book, how is the accountant going to do that? The accountant says, and it's the only thing that we have in the record on this, is that she is confident she would identify these things presumably by the handwriting. She does say that she recalls these records. They were unusual. They were distinctive. They were – this is my term, not hers, but she said essentially that Ms. Nolan kept records in kind of an old-fashioned way. She did everything by hand. It was all carbon copies of checks. She wasn't printing things from the computer. She says she could recognize them. Something else just popped in my head as you were asking me that question, which is many of these records are bank records. So in addition to Ms. Fouts authenticating them, they could be authenticated by the banks that issued them. Checking account records, for example, could be cross-correlated with that. Some of it's credit card records. That could be cross-checked against the banks. So the only thing in the record here indicates that there are other ways of authenticating these documents, and ultimately it's a question of that's something down the road.  Whether at some point down the road there is a criminal prosecution and if these documents are sought to be introduced and if there's a problem with authenticating some of the documents, then some of these issues could be explored at that time, but there's no need for the government to start issuing immunity as a matter of course so far in advance without even knowing what direction this is ultimately going to take, if it takes any direction. We've been talking about 45 minutes, which seems, even for a very intelligent person, not an awful lot of time to go through the number of boxes that you're talking about. On October 1, 2010, there's her billing statement of .75, and that's where we get that information. But there's also on October 4, which is just three days later, there's an entry of 1.75 that appears to be for the same reason. That's at Excerpt 53. Isn't this closer to a two-hour review than a three-quarters of an hour review? Yes, absolutely. We have never really conceded that 45-minute, that's Mr. Wiles' argument, but you're exactly right. On Friday, October 1, she says in her billing statement she began review, and then it shows that the following Monday, the billing entry said continued review. She says that in more detail at ER 37, which is her declaration, paragraph 7, where she specifies which records were reviewed on October 1 and which records were reviewed on October 4, and then she actually says that she continued to work through October 12 and 13. So it would appear that there's more than that three-quarters of an hour. Almost certainly. The billing record itself and that declaration show she specifically was reviewing those records on the 4th. I would also argue she probably looked back at them through the preparation of the return, because she said she did cross-check them for purposes of she had to do what would be called carry-forwards of things from prior tax years. I mean, for example, in preparing for this... You've got here a minimum of two-and-a-half hours that's identified, plus what looks like additional time she spent. So this wasn't just a quick walk-through, I guess, according to this record. That's correct. That's correct. It appears to have been considerably more than 45 minutes. And there's really nothing that rebuts her claim that she's confident that she'd be able to authenticate these documents again. In short, I think we've made the showing under Fisher, under Bright, under other decisions. I would also cite the Sixth Circuit opinion in Schlansky, I think, which we cited in our brief, is a very useful decision in this area. And I think we've made the required showing to have these boxes and accordion folders of documents produced at this time. How is the – Seidman relies on a Judge Patel opinion from 2001, I think, which you never responded to in your brief. And I wonder if it – I understand that since it's an abuse of discretion standard, they could come out differently. But is there really any difference between the cases? Yes. There's several differences between that opinion and this case here. In that case, that Seidman proceeding, there were some documents that she found could not be authenticated by the government. So it's really – it's a finding of fact by Judge Patel on a different record. Here we have a finding by Judge Alsup that these documents could. So it's just a different fact finding by the district court. Furthermore, in that earlier Seidman proceeding, there were some categories of records that the government did not know anything about in advance, so that turning them over in the production would be an act of production that could be incriminating, whereas here it was found that there was nothing in these boxes of documents that the government didn't know about already before issuing the subpoenas. Those are really the primary distinctions between that case and Judge Patel's decision. She also – as Judge Alsup pointed out, she relied in that decision quite a bit on the Seventh Circuit decision in Porter, which has been somewhat discredited. That decision of the Seventh Circuit was issued before the Supreme Court issued its Doe opinion, and not only Judge Alsup, but even the D.C. Circuit in a case called In Re Sealed Case from the – it was a 1980s case. The D.C. Circuit questioned whether the Seventh Circuit's Porter decision was inconsistent with the Supreme Court and even inconsistent with other Seventh Circuit cases. So for all of those reasons, we think Judge Patel's decision should not be followed here. And, of course, obviously it's not a published decision of the district court. In fact, it was under seal. I think the only reason it is here is because it's the same law firm and they knew about it. I think that's the only reason they even had access to that decision. It might have been helpful, though, had you – All right. Thank you very much. If there's – are there any further questions? All right. I thank the Court for its time. There are not. Thank you. Thank you to both counsel. The case just argued is submitted. And we'll take about a ten-minute recess at this point. Thank you.
judges: Wallace, Graber, Berzon